The third case in the morning is People v. The State of Illinois v. Roy Evans. We have Mr. Waller for the appellant, Ms. Brooks for the athlete. You may proceed. Thank you. May it please the Court, Counsel, my name is James Waller. I work for the Office of the State Appellate Defender. It's my pleasure to represent Roy Evans in this case. This case is about a fight that occurred in February of 2016 in a mall parking lot outside Champaign. The fight was between Roy Evans and an intoxicated Jessica Cunningham. Roy and Jessica were the only two witnesses to the fight. The fight resulted in the charge of aggravated domestic battery against Roy. The trial was a classic he-said, she-said trial. The jury had to determine whether Jessica was telling the truth, that Roy beat and choked her, or that Roy was telling the truth, that she was hitting him and he was fighting to keep her off of him. But before the trial even began, the trial court erroneously kept evidence of Jessica's aggressiveness from the jury, which effectively denied him the ability to prove self-defense and impaired the jury's ability to judge the credibility of the only two witnesses, Roy and Jessica. Trial counsel, in an abundance of caution, filed a motion to eliminate, seeking permission to introduce two pieces of evidence. One was a video taken some weeks later of that incident, which showed Jessica attempting to set Roy's beard on fire. The other piece of evidence kept from the jury was the fact that Jessica was facing criminal damage to property charge in Vermilion County, wherein she was accused of damaging Roy's vehicle and inciting on his house. Both of those incidents occurred after the fight that led to Roy's trial, but before the trial itself. The trial court denied the motion to eliminate, ruling that because these events took place subsequent to the incident at trial, they were not relevant. Trial counsel did argue, particularly as to the attempted face-burning video, that it was relevant, pursuant to Illinois Rule of Evidence 404A2, as a pertinent trait or character of an alleged victim, to wit, a propensity for violence in this case, arguing that Jessica continues to harass and endanger Roy, and that her violence and aggression is an ongoing issue between the two of them. Unfortunately, Judge DeFonis ruled that because it was subsequent, it was inadmissible. Now, the state concedes that the burning video should have been admissible under Lynch to support Roy's self-defense claim, by showing that his knowledge of Jessica's violent tendencies necessarily affects his perceptions of and reactions to her behavior, and because evidence of Jessica's propensity for violence tends to support his version of what happened in that mall parking lot in February 2016, in which Jessica, intoxicated, jealous, and angry, began beating on him as soon as they got into the car, and he was fighting to keep her off of him. The state agrees that video should have been admitted, but argues that it was harmless error to deny the jury that evidence. Again, this is the definition of a closely balanced case. I want to accept the state's concession on that. What's the best case you have that says that after behavior, later behavior is admissible to show his perception at the time? Sure. People v. Johnson, which I cited in my brief, defendant may introduce evidence of the victim's aggressive and violent character regardless of when he learned of it. That's 172, 371. Several cases stick with that principle, but I think Johnson's the one that lays it out most clearly. It says any evidence of violence is admissible. It's a closely balanced case. They were the only two people who knew what happened, and they told very different stories. Those stories were the only evidence in the case. Police took some photos of markings on Jessica, but both of those stories accounted for those marks. The question was whether they were inflicted offensively or defensively. Now, a reversible error like this occurs when a reviewing court, after considering the entire record, determines that the rejected evidence could have reasonably affected the verdict, and a reviewing court will refuse to disturb the judgment where guilt is shown beyond a reasonable doubt or where if the evidence came in a different result could not have been reached. Or to use the language that the state cited from People v. Colon, a reviewing court will not hold that an error is harmless unless the court is satisfied beyond a reasonable doubt that the error did not even contribute to the defendant's conviction. As we sit here today reviewing the record, I don't think any of us can be that confident that if the jury saw Jessica lighting Roy on fire, they wouldn't believe that maybe she was also capable of beating him that day while she was drunk and angry, and then maybe he only bit and pushed back on her neck to get her off of him. The state says it doesn't matter because nothing she did justifies the choking, but that begs the question of whether a choking happened at all. Roy certainly disputes that he choked her. The jury gets to decide if that choking happened or if those marks were caused by Roy holding and pushing her to get her off of him. But it needs this evidence of her violence to make that determination. Now the evidence of the pending criminal damage to property charges are admissible for the exact same reasons that the burning video is also admissible. It shows a pertinent violent character trait of Jessica's. She attacked his vehicle and his house. Criminal damage to property is basically aggravated battery against a property. It's evidence of a violent nature. The state used some language from people like Gilbert to stand for the proposition that criminal damage to property charges are not admissible as lynch evidence. That's not exactly what Gilbert says, and the facts and reasoning in Gilbert don't apply as much to this case as the reasoning in Stout that I cite applies. Gilbert talks about a 1982 conviction for criminal damage to property as one of the convictions that would not have been admissible under lynch at trial seven or eight years later. It's unknown whose property was damaged in that case or if there's any relation between those parties and the parties that are actually at issue in Gilbert's trial. But in this case, we know for sure that the victim of Jessica's criminal damage to property is Roy Evans, may also have been the victim of her aggravated battery in the mall parking lot as well. The case that should guide this court is People v. Stout. Procedurally, Stout's kind of the inverse of this case. In Stout, the state filed a motion to eliminate to prevent the defense from introducing evidence of pending charges in the neighbor county against their chief witness. In this case, defense counsel filed a motion to seek permission to inquire it, but the analysis is the same. In both cases, the charges against the witness, Starks in the Stout case, Jessica Cunningham in our case, were filed after the incident that led to the defendant's trial and were pending at the time of trial. The trial court barred the evidence. In reversing the trial court, the second district held that the jury should have heard that evidence, particularly because the question of consideration from the government in Stark's own trial in exchange for Stark's testimony against Stout in Stout's trial would be relevant to a credibility determination by the jury. And the trial court's error in both of these cases is far from harmless. Just like Jessica Cunningham in the case at Barr, Starks was the key witness and their credibility or lack thereof was crucial to the state in the Stout case. Absent that person's testimony, there's no evidence that even approaches overwhelming evidence or evidence beyond a reasonable doubt, which would be necessary to find the error harmless. So I propose that the evidence of that pending charge is both admissible as evidence of Jessica's pertinent character trait for violence in a case that turns on which one was the violent aggressor, but also the criminal damages property charge is admissible because it goes to credibility. It was a pending charge where the defendant in one case is a sole witness in another case against the same person. Was there any requirement that she testify against Roy in this case in consideration of her own felony charge? I don't know. She did plead guilty and got second chance probation in that case, which the prosecutor has to agree to. So it seems like there must have been some consideration, but we don't know. The point is we don't know because the defense was not even allowed to inquire into that bias issue. So the pending criminal damage to property charge was admissible under both Lynch evidence and to aid with the credibility determination. As the state concedes, the burning video is absolutely admissible. Defense counsel would have been within their right to just inquire about or introduce either of these pieces of evidence at trial, but just to be safe, they filed the motion to eliminate. The trial court's denial of that motion was a reversible error, especially when the entire case was so closely balanced and the entire function of that jury was to make a credibility determination between these two witnesses. Either of those decisions by the trial court to keep out the evidence would be a reversible error. Neither of them were harmless. The cumulative effect of both was to outright deny Roy Evans a self-defense claim and deny him a fair trial. For those reasons, we ask that this court vacate Roy's conviction and remand the case for a new trial. It's my intention to stand in the briefing on the sentencing argument, but I'm happy to answer any questions the court has. Any? Otherwise, I'll end the briefing. No questions. Thank you. We'll hear from you in rebuttal. Thank you, Your Honors. May it please the Court. My name is Allison Paige Brooks. I appear on behalf of the people. The state did argue forfeiture in its brief on one part of the issue, not about the lynch issue, but about a different set of separate issue. The motion in limine alleged that Cunningham had continued to harass the defendant and would not disengage from him and, therefore, went to her credibility. Now, for the first time on appeal, the defense makes an entirely different claim citing Stout, a case where leverage was actually argued to the trial court, and the trial court refused the evidence of prosecutorial leverage and was reversed on that basis, whereas here the motion in limine made no mention that the pending case of criminal damage to property constituted any sort of leverage the prosecutors had. Instead, the defense wants this court to assume that there was some sort of leverage where there's no record made on the issue. The record could have been made outside of trial if that was something the defense wanted to establish as part of the hearing on the motion in limine. So the fact that the evidence was barred is not a reason for why there's no record on the issue. There's no record on the issue because the defense did not claim the pending charge on the criminal damage constituted a leverage. They did get to invoke the pending DUI. This was a case where, following the incident, the victim was arrested for driving under the influence following the stop, which the stop happened right after the alleged crime here, the aggravated domestic battery. So, stout is actually distinguishable on that grounds. The issue of leverage as a separate ground for admission of this evidence is forfeited, and that's why stout does not govern. With respect to Illinois rule of evidence 404A2, the state did concede that under Lynch, the violent act perpetrated, alleged violent act, we claim to have a video of it, of the burning of the beard constitutes Lynch evidence. That is admissible under rule 404A2. When the state cited the general limitation on admission of character traits, then that is because that is not the, that applies to any other purpose. The allegation that Cunningham continued to harass the defendant and would not disengage, if that is alleged to be a character trait of Cunningham, that is sort of like, it becomes propensity evidence, essentially, and is generally inadmissible. So, the only exception that would govern is if that act constitutes a, quote, violent act, end quote, under Lynch. And under the Gilbert case cited by the state, criminal damage to property, damaging a car, house siting, the Gilbert case ruled that one of the issues there was a prior conviction for criminal damage, and that was not allowed in as Lynch evidence. It's not considered a violent act. And there's not a lot of analysis in that case, but I haven't seen a case that says that simply damaging someone's property constitutes a violent act for purposes of Lynch. So, when the state does concede that it was admissible for the purposes of establishing the sole issue of who was the aggressor. I'm not sure if the defense has confused the nature of the state's concession on that point. The state did not concede that the evidence would have been admissible for defendant's perception because this was an incident that happened after the charged aggravated domestic battery. So, therefore, it could not have been relevant to establish his perception at the time of the offense because it didn't even happen yet. So, the state has not conceded that relevance. It does not go to the reasonableness of the defendant's behavior here. It goes simply to the issue of who was the aggressor. And because the evidence on that point was conflicting, it would have been admissible for that limited issue. That doesn't mean it's admissible to show that Cunningham was credible or not. It shows it's admissible because it tends to make more probable the defendant's version of the events in that the defendant claimed that she hit him first. Whereas she testified, Cunningham testified, that he hit her first in the car. So, even though there is a dispute on that point, and the Lynch evidence would have informed the jury on that one issue, the issue of who is the aggressor is only simply one of the several elements of the self-defense claim that has to be disproved by the state. And in the case where they're strangling, which is the allegation here, corroborated by a photo of the bruises on the victim's neck. So, this is not simply he said, she said, as the defense wants the court to believe. This is actually a case where the victim's testimony was strongly corroborated by a photograph and the observation officer shortly after the incident. So, if the allegation is strangling, which the jury could reasonably believe is conduct that is likely to cause great bodily harm or death, and therefore the limitation on self-defense kicks in, which means that the defendant's own conduct has to be necessary to prevent imminent death or great bodily harm. We have an 89-pound woman using bare fists. We have a 250-pound defendant, and this is not a situation where the victim was armed with a deadly weapon. So, strangling an 89-pound woman by a 250-pound man, an 89-pound woman has bare fists, is not justified by self-defense because the defense conduct constitutes essentially deadly force, force likely to cause death or great bodily harm. How much of this is going on or testified to be going on while the victim is driving, and while the victim is apparently exceeding the speed limit, driving over 100 miles an hour? Well, I don't specifically... Is that clear in the record? There is, I think there's an argument in the parking lot of the mall, and then it does continue on into the roadway, and there is a high rate of speed. It's in on an interstate. The problem with the issue, though, there would be is that the defendant has to testify because he has the burden of establishing some evidence on each element of self-defense, and one of these elements of self-defense claim is that he has to subjectively believe this. No, it has to be subjectively believed. It has to be objectively reasonable to be completely exonerating. So he has to testify that the reason why he strangled her, for example, is because she was driving at a high rate of speed on the interstate and that he felt it necessary to incapacitate her, for example, or something like that. If he doesn't testify to that, then that's not a self-defense-type claim that would force likely to cause great bodily harm or death, because he has to subjectively believe this, and he has to then testify to that subjective belief, and that subjective belief also has to be objectively reasonable, and so that's why the record doesn't really show that his self-defense claim could have been sustained. The jury could have had a reasonable doubt as to justification, for example. That's why the state is arguing that this is essentially an overwhelming case, that the defendant could not have been justified. No reasonable jury would have found him justified. The jury found beyond a reasonable doubt that he did strangle the victim and that he was not justified in that, and this evidence that weeks later she attempted to set fire to his beard would not have made any difference. That's why the state requests this court to affirm the judgment. Despite the fact there was an error. The error in failing to admit the lynch evidence is not automatically reversible. It can be harmless, and this is an appropriate case where it should be deemed harmless. With respect to the sentencing argument, I just want to say that it was forfeited. The defendant says it's not. The motion to reconsider said that the trial court placed too much weight on the deterrent factor. Howard is raising a vastly different objection on the appeal. For the first time in an appeal, he's complaining the trial court essentially relied on hearsay testimony, which is a totally different objection. And, of course, hearsay testimony from an officer about statements from Morgan Britt collected as part of an official investigation of an offense, it is admissible in sentencing. And there is no plain error, and therefore he's not entitled to a new sentencing hearing. So I'd entertain any questions. Counsel, I have a question on the state's concession. The burning of the beard occurred after the charged incident. Yes. Okay. What case are you relying upon to say that that would therefore be admissible, even though it occurred after the charged incident? Are you suggesting that Lynch says that? I'm not sure if Lynch said it, and I'm not sure if I have a case cited. I don't think it's in my brief. I'm not sure if the defense cited it in their brief as well. I think I have seen authority, though, and it wasn't really a point of contention, so we didn't argue about it. The next thing I ask the opposing counsel, he cited People v. Johnson. I question whether it states what the counsel has suggested, but I will have to take a look at that again. But you think there is case law, but you just don't have a case available right now. Yeah, I don't remember, Johnson. My own research, and the reason why we did not make an issue as it, is the defendant may introduce such evidence, regardless of when he learned of it, as to the issue of who was the aggressor, but the juxtaposition in the defendant's brief, that it goes to the issue of the reasonableness of the perception, that is not warranted. Those two sentences follow after each other. My understanding is the defendant may introduce the Lynch evidence, regardless of whether he learned of it, particularly in a situation where it didn't even happen yet, only as to the issue where there is a conflict in the evidence as to who was the aggressor, and that was the situation here, where there was a conflict as to who was the initial aggressor. So therefore, it could have been and should have been admissible on that sole ground, but it does not go to the defendant's perception, because we're talking about a matter that didn't even happen yet, in terms of the timing of this. Right. So that's the very limited nature of the state's concession, and my understanding is that as to the issue of who is the aggressor, that it is admissible, regardless of when the defendant learned of it. Well, it could be that she was aggressive when she set the beer on fire, because she had been attacked and choked before, and therefore it seems to me that that would suggest a reason why it shouldn't be admissible. But anyway, that's not really a question. I'm just kind of throwing it out there. Right, but it doesn't have to be between the victim and that same defendant. It could be the victim's conduct with other people. As long as it's a violent act, regardless of when the defendant learned of it, it can be admitted on the issue of who was the aggressor when the evidence is conflicting on that point. That's the limited nature of the state's concession. Thank you, Your Honors. Thank you. Rebuttal. May I please, Court, just to answer a couple of the questions therein. Counsel is right. It doesn't – the nature of that carve-out for propensity evidence, the nature of 404A2 can be to show any violence, any propensity for violence on the victim's part, again, whether they're yelling at the Little League coach or it becomes even more relevant when it is between the same parties, whether it's before or after the incident. And, again, I do – I would ask the Court to review Johnson. It is on page 11 of my brief, the full site for that as well. To answer the question as far as whether the fight was ongoing while the car was on the interstate, I think the record's not clear. I spent some time trying to figure that out myself. It's clear that a large amount of the fight happens in the car, in the parking lot. There's description and testimony while she has her foot held on the brake and maybe leaning over him and beating on him, et cetera. And at some point, a third party pulls up alongside their car while they're still in the parking lot to basically see if everybody's okay. Nobody says anything to them. That person pulls off. I suspect – my read of the evidence is that that was probably the end of the violence as well. But I don't think anybody actually says whether it was still going on as the car's doing 105 miles an hour on the interstate. Well, there is testimony that she becomes more upset and angry because they're going to break up. And I don't recall that specific testimony. You may very well be right, Your Honor. I would have to review that. But, I mean, it's not uncommon for shortly after an emotional, physical event between two people that emotions keep running higher and it makes perfect sense to why maybe her foot's coming down hard on the accelerator at that point. So whether the fight was still ongoing or people were dealing with the emotional aftermath right afterwards, either one of those could explain that. Also, the fact that she was so high off the legal limit. Again, I do want to stress that I do not believe that Gilbert is dispositive of whether the criminal damage to property is admissible. Counsel's right, there's not a lot of analysis on that. The court just says out of hand, well, and of course, the criminal damage to property wouldn't be admissible as a lynch. But it's a very, very different situation when the criminal effects, excuse me, the criminal charge, the bad acts are so nearly contemporaneous, as opposed to seven or eight years later and against different parties. It becomes really evidence of violent behavior when it's between the exact same two parties that keep going after each other. Counsel spent some time talking about the size differential between the two and how therefore no reasonable jury could come to a conclusion that self-defense was justified. First of all, again, I believe that the testimony from both sides accounts for the markings. There are photographs, and I was just reviewing my factual base to see if it was in there, but my understanding is that the marks, there's a mark right in the middle of the trachea and on one side. There was not the bilateral ligature or bruising that we usually, not usually, but that we often see with strangle cases. They were perfectly consistent with also just somebody holding somebody back with their forearm or their hand as the person's leaning over them. And she suffered a bite wound in this fight. That's a defensive move. Somebody who's this much bigger than her in the front seat of a car, biting somebody is not going to be their go-to move in a fight. That's somebody who's trying to get somebody off of them. So I think both of their testimony accounts for the photographs, which means there is no evidence outside of her testimony. So this is absolutely a closely balanced case. Any restriction of evidence from the jury that would help them decide which of these people is telling the truth or which of these is the initial aggressor or who continues to be an aggressor throughout the relationship would have been necessary to present him with a fair trial. So we ask the court to vacate the conviction. Do you have time for just one question? Yes, of course. In your reading of Lynch, is that in direct conflict with the ruling in Johnson? I don't believe it is. Do you recall Justice Turner asked counsel what her authority was and asked if it was not Lynch? And you cite Johnson for what appears to be the converse situation, that it was unknown to the defendant at the time, so it can't be a part of the perceptions of the defendant. My reading of Lynch and the many cases that have cited Lynch is that basically evidence of somebody's violent nature is admissible. And it's not causally related. You don't point to this incident afterwards and say, see this retroactively affected my perception of time. The rationale, my understanding of the reasoning in it is, I live with this person, I'm in a relationship with this person, I know how this person is all the time, I know that they're aggressive and it affects my perception of them every time they come at me with anything. Here's an example of that person being that way and aggressive. It's not to say, it's not causally related back in time, it's an example of the thing I'm trying to tell you, jury, which is that this person is always coming at me and violent. So Lynch stands for the fact that you can show that violence and Johnson clarifies that by saying before or after the incident. Thank you. Tough matter and advice.